UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAYMOND ROLES,<br><br>             Plaintiff,<br><br>v.<br><br>JAY CHRISTENSEN and RHONDA OWENS,<br><br>             Defendants. | Case No. 1:19-cv-00292-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

**1.    Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2.  **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). All of a plaintiff's allegations must be included in the complaint itself; a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

3.  **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Center ("ISCC"). Plaintiff states that he is "in the House of Yahweh" and that he "keep[s] Kosher." *Compl.*, Dkt. 3 at

2. Plaintiff contends that the prison's policy of requiring inmates to eat breakfast and dinner in the chow hall—instead of allowing inmates to take those meals back to their cells to eat—violates his religious dietary restrictions.

The prison used to allow inmates to bring their food back to their cells at all three meals: breakfast, lunch, and dinner. However, Defendants changed that policy, apparently as a result of staffing shortages, to permit that practice only during lunch. *See* Dkt. 3-1 at 1. For breakfast and dinner, inmates must remain in the chow hall to eat their meals. Dkt. 3 at 2.

Plaintiff does not appear to contend that the prison food itself is non-Kosher or otherwise made in a way that violates Plaintiff's religious dietary restrictions. Rather, he claims that eating in the chow hall contaminates the food, and it thereby becomes non-kosher. The Complaint does not explain how this contamination happens, but Plaintiff's grievance on the issue does. Plaintiff grieved the problem as follows:

> You deny me my 1st Amendment Right to my Kosher Religious mail. you force me to eat in the chow hall on an unclean table, where Kosher food cant Remain Kosher. I Touch an unclean Table, The spork becomes unclean, Spork touches Kosher food; food becomes unclean. Pork, meat and milk together on all these Tables, unclean, and can't be made clean.

Dkt. 3-1 at 1 (verbatim).

Plaintiff appealed the denial of his grievance and explained further:

> Kitchen dinning room Tables are un-clean, with pork, non-kosher meats, milk, cheese, chicken and more. Tables can never be servisable for kosher kitchen, Kosher food can't be prepared and cook in Non-Kosher Kitchen, Kosher food can't be served and eaten on unclean Tables. if I touch an unclean

> thing, I become unclean and anything I touch becomes unclean as well.

*Id*. at 2 (verbatim).

Plaintiff states that he has to throw away his food when he is forced to eat in the chow hall because he may not eat food that has become non-Kosher. Dkt. 3 at 2. As a result, Plaintiff eats only one meal per day—lunch, the only meal that he can ensure it remains Kosher by eating it in his cell.

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

**4.  Discussion**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations.

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09. A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A. Standards of Law for Inmates' Religion Claims

The First Amendment Free Exercise Clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). A prison need not, however, provide "identical facilities or personnel" for "every religious sect or group within a prison," and a "special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n.2.

To serve as a basis for challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, the burden placed on the inmate's religious exercise by the defendants' actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment

interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be considered in this reasonableness inquiry include (1) whether there is a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would have on "other inmates, on prison personnel, and on allocation of prison resources generally"; and (4) whether there is an absence of "obvious, easy alternatives to the policy adopted by" prison officials. *O'Lone*, 482 U.S. at 350-53 (internal quotation marks and alterations omitted). "[E]ven where claims are made under the First Amendment," courts must take care to avoid substitut[ing] [their] judgment on difficult and sensitive matters of institutional administration." *Id*. at 353 (internal quotation marks and alteration omitted).

A prison's occasional failure to accommodate a religious practice does not violate the Free Exercise Clause where there is no evidence that the failures were caused by

"anything other than institutional shortage." *Id.* Similarly, a temporary delay in accommodating religious practice does not violate the First Amendment when caused by ordinary administrative or institutional delay. *See Tapp v. Stanley*, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (unpublished) (holding that a 3-month delay in providing a prisoner with a religious meal did not substantially burden the prisoner's sincerely-held religious beliefs where the delay was "caused by ordinary administrative delay").

Prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). However, this right must be balanced with the prison's "legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993).

The First Amendment does not require a prison to provide a specific religious meal for an inmate. The state may require him to choose from a range of diets, provided that at least one of these diets allows the inmate to comply with his religious dietary restrictions:

> Because Plaintiffs can choose a diet plan that does not include any food that would violate their religious dietary laws, they have not established that they are substantially burdened by the failure of IDOC to offer a specific, separately-prepared Catholic or Halal meal. Plaintiffs are not entitled to demand meat in a religious diet—they are perfectly able to choose a vegan diet (or a non-pork or lacto-ovo diet) that complies with their religious dietary restrictions. IDOC's decision to offer the selective diets instead of specific religious meals prepared according to each inmate's religious beliefs is reasonably related to the legitimate penological purpose of meeting and maintaining each prisoner's nutritional needs, while still running an efficient institution. The First Amendment does not require prison officials to offer each prisoner his own religious meal option, tailored to that particular prisoner's expressed

religious belief.").

*Hogan et al. v. IDOC*, Case No. 1:15-cv-00308-BLW, Dkt. 11 at 11 (D. Idaho Dec. 15, 2015).

The First Amendment is not the only source of religious protection within a prison. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA applies to entities receiving federal financial assistance. *Id*. at (b)(1). By accepting federal funds, however, states do not waive sovereign immunity to suits for money damages under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011). Further, although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902-04 (9th Cir. 2014).

Under RLUIPA, the inmate bears the initial burden of showing that the governmental action constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). For an official's action to constitute a substantial burden on an inmate's religious exercise, it "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In

determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

If the inmate establishes "the prima facie existence" of a substantial burden on the exercise of the inmate's religion, then the burden shifts to prison officials "to prove that [the] substantial burden on [the inmate's] exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party. If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (internal citations and quotation marks omitted). Prison officials or a state department of correction "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

Although RLUIPA is to be construed broadly in favor of protecting an inmate's religious rights, *id.*, the statute does not "elevate accommodation of religious observances over an institution's need to maintain order and safety," *Cutter v. Wilkinson*, 544 U.S. 709,

722 (2005). A prisoner's requests for religious accommodation must not override other significant interests within a prison setting. "Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter*, 544 U.S. at 726. In the words of the Supreme Court, "context matters." *Id*. at 723 (quotation marks and alteration omitted).

With respect to religious dietary restrictions, RLUIPA does not require a prison to build a separate kosher kitchen in which to prepare meals for Jewish inmates. In *Baranowski v. Hart*, the Fifth Circuit held that a prison's failure to provide kosher meals did not violate RLUIPA because it was the least restrictive means to serve the compelling government interests of "maintaining good order and controlling costs." 486 F.3d 112, 125–26 (5th Cir. 2007). The court relied on the following: (1) the prison's "budget [wa]s not adequate to cover the increased expense of either providing a separate kosher kitchen or bringing in kosher food from the outside"; (2) the prison's "ability to provide a nutritionally appropriate meal to other offenders would be jeopardized (since the payments for kosher meals would come out of the general food budget for all inmates)"; (3) "such a policy would breed resentment among other inmates"; and (4) "there would be an increased demand by other religious groups for similar diets." *Id*.; *see also Mathis v. Brazoria Cty. Sheriff's Office*, No. CIV.A. H-08-3703, 2011 WL 3648101, at *14 (S.D. Tex. Aug. 17, 2011) (unpublished) (jail's denial of kosher meals did not violate RLUIPA where jail's budget would not allow it and where "[c]ooking kosher meals at the jail would require the construction of a new and separate kitchen area, the purchase of separate equipment and

utensils, and hiring more personnel").

If a prison accommodates an inmate's religious dietary restrictions—for example, by providing kosher food in general or maintaining a kosher kitchen in particular—an infrequent failure to strictly follow those accommodations does not violate RLUIPA. That is, RLUIPA allows prisons some leeway in accommodating religious diets. *See Holsombach v. Norris*, No. 2:08CV00022JMMBD, 2009 WL 424166, at *6 (E.D. Ark. Feb. 18, 2009) (unpublished). In *Holsombach*, the prison maintained a separate kosher kitchen. However, the kitchen was not always kept strictly kosher. For example, (1) "Kosher food trays and main-line food trays [we]re washed together"; (2) pork was "cooked in the same kitchen where Kosher meals are prepared"; (3) "main-line food items sometimes were placed on Kosher trays"; and (4) inmates used "utensils from the main food line to steal peanut butter from the Kosher kitchen, thereby contaminating the tins of Kosher peanut butter." *Id*. at *5–6. Nonetheless, the prison "employ[ed] reasonable measures to maintain a division between the main-line food preparation and Kosher food preparation." *Id*. at *6. Because the prison could not be held "to an absolute standard" in accommodating inmates' religious beliefs, these occasional failures did not violate RLUIPA. *Id*.

### B. The Complaint Does Not State a Plausible Claim under either the First Amendment or RLUIPA

Plaintiff has not plausibly alleged that Defendants' policy of requiring inmates to eat in the chow hall for breakfast and dinner causes a substantial burden on Plaintiff's exercise of his religious beliefs. The alleged contamination occurs when Plaintiff or his

spork touches the table. However, whether or not Plaintiff touches the table, or allows his spork to touch the table, is entirely within Plaintiff's own control.

Plaintiff does not allege that meals are not on trays. If there is a tray between the meal and the table, the meal will not become contaminated by the table unless Plaintiff chooses to place his food directly on the table. Similarly, if Plaintiff places his spork on his tray, it will not touch the table. Plaintiff is "perfectly able" to take these simple measures, which would easily solve Plaintiff's problem. *Hogan*, Case No. 1:15-cv-00308-BLW, Dkt. 11 at 11. Thus, the Complaint does not plausibly suggest that the meal policy imposes a substantial burden on Plaintiff's religious exercise.

**5.     Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the

following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and

address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 28 days, this case may be dismissed without further notice.

2. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: October 29, 2019

David C. Nye
Chief U.S. District Court Judge